Thank you, Your Honor, and good morning. May it please the Court, Sam Hartzell for Appellant Press Millen. The District Court held Mr. Millen in civil contempt and suspended him from admission to the Western District of North Carolina because of a decision only a Dutch lawyer can make, what DMARC Advisor files in Dutch court. The Court should reverse that contempt order for three reasons. First, there is no evidence that Mr. Millen violated the correction order. To the contrary, the record shows that Mr. Millen and I took the steps within our power to achieve compliance with that correction order. We took those steps together. The record shows no daylight between us. As U.S. counsel, we jointly instructed our client to file the required statement, but we hit a wall. Mr. Mayboom, the client's Dutch counsel, has the absolute right under Dutch law to control what DMARC Advisor files in Dutch court. District Court, we seem to be concerned Mr. Millen didn't do what you did, that is to actually deal directly with the counsel there, but I'm assuming that of these three things you're going, it seems to me the harm probably is the one I would focus on, but I'm just thinking, you know, in terms of, well, he did it, but this is civil contempt. It's very difficult to look at this case, and there are violations that seem to me very clear, and I think this applies to me, quite frankly, but I'm not so sure from a civil contempt perspective that exists here, because this is not a criminal intent. I mean, the punitive things of not following my orders, of not doing it, whatever, there is at the end of the day, is so what? Because ultimately the court did it. You tried to persuade the counsel to do it. He wouldn't do it. There's no indication he would do it otherwise. So that seems to be the focus to me of the case from your perspective. You're right, Your Honor, and as my colleague, Ms. Duffy, just said, the important point is the Dutch court had accurate information. The Dutch court had all this information in front of it, but what I do, harm is an element of civil contempt, and that is an important requirement because of the potent awesome power of civil contempt, but I want to make clear that Mr. Millen is not standing up here right now through me saying I violated the order, but no harm, no foul. Yes, that is an important part of our argument, but the lead argument is we complied with that order. You know, I could imagine a lawyer. You and he are not the same person, and I think that's where the district court went with this. District court gave a specific rendition of what it wanted done, and that seemed to be the focus taking on this is you didn't do this, but it also gave it a, you know, it's almost like wondering why I just didn't issue a conditional situation. If you don't do this, then I will end the contempt and allows him to purge himself of it. I don't. Has he done that? No, Your Honor, and can he do it? Could the district court? No. Can Mr. Millen purge himself of this contempt by simply complying with the order in the manner that the district court wants him to? No, as a matter of practical impediment and as a matter of conscience. Practical impediment. I got all that conscious and practical stuff. I'm talking about a contempt court, about a federal district court order. You know, it's practical policy. I'm talking about getting rid of an order. Can he? What is it that the court, what specific court wants him to do? He has to file a statement in Dutch court. Yes. On behalf of D. Mark advisor apologizing for his own statements, which he believes are true. Well, it on maybe on behalf of his client, but it's also it was really a statement he made. It was his affidavit apologize for what the court perceived to be misleading statements and say it was wrong, whatever. And rightly, there may be something to support the position he was going. If you look at it in the manner that the council previously put it in, that is under Dutch law, that would be, that would have been true and may have been there. What's missing is from that, which I think is a fair statement, except for this point, you didn't tell what was going on, what the American side was, that that's not true in America. It may be true here. And so, so my question is, is it just a matter of pride or, or you don't want to, I mean, it seems to me if you, if you just send a statement and says, well, I may have been misleading, leading the court. I'm not going to say this is going to be sufficient for the district court, but I did this. It appears as though the court in America interpret that to be misleading. And to the extent that it was interpreted in that manner, I sincerely apologize to this court. It's just a courtesy. And then once you do that, take it back to court, says court, judge, apologize. And boom, gone. That sounds simple to me. But you could press it on and says, well, I'm just right. I'm just right. There is another component of this that I wouldn't want to see come up. I mean, to the extent that district court has gone in this direction, may not be a contempt order, but it certainly seems to be from the district court's perspective, an ethical consideration. I mean, that would be, if a court, federal court has interpreted you misleading, that's pretty powerful stuff on an ethical type situation. I don't know if you need to go there. I'm just saying, because if you could get rid of it, why wouldn't you? I understand the concern. Not a concern. It's really a question of just tell me why you wouldn't, what prevents that other than, as you say, the practical or the moral side of it. It seems like my pride would be hurt. Yeah. Which I think you could do it in a way you might could, you know, sometimes you do have to get up and apologize. And it doesn't have to be like, you know, I was just wrong. I did it for a reason. The court didn't accept my reason, which happens all the time. And I apologize to the extent that it appears, though, I may have been misleading the court. I never intended to do that, that sort of thing. I, you know, I mean, that sounds so simple. I do want to make sure the court is considering the DeWolf Declaration that explains why, as a matter of Dutch procedure, it is not a simple thing. In fact, it's impossible for somebody other than Dutch counsel to make a decision about what gets filed in Dutch court. Mr. Mayboom appeared in district court and explained to the district court that the compliance was to the maximum extent, in his view, that could be done. I don't have a view as a matter of Dutch law whether he's right. But it's just a statement. And even that could be put in the statement. That the statement could be simply saying, as I understand under Dutch law, they said the American court has interpreted a little different. That's my position. You see where I'm going with this? I do. It was a very nuanced statement that could be just submitted. You take it back to that district court, I think probably this court would say, no contempt. I mean, God. And you're me. And that's part of what we tried to do in my declaration, you know, looking at page JA-1707, is the email that we sent. Mr. Counsel saying, there's concerns that are being raised here about whether, you know, we have fully conveyed, you know, the district court's perspective on this. Let me allay those concerns. Here is some, a draft statement from me as U.S. counsel. Let me ask one last question. I'll leave that one. I want to ask this. Are you saying he cannot file a statement himself in this court? It would have to be done to the lawyer from, the Dutch lawyer. Yes. You're saying you as a lawyer here cannot do that. They don't allow pro-op VC or whatever type, you know, you to practice it. And you just can't put something in the record there. Yes, Your Honor. But you could submit it to the counsel and ask the counsel to do it. And then come back and says, Your Honor, I've done everything I possibly can do to get it before the court. The counsel, the counsel doesn't comply. It's not on, it's not on Mellon. It's on the counsel. And that's what we did, Your Honor. A J-A-1708, Mr. Mayboon responds, thank you for the draft statement. We cannot use it. We are not allowed to make filings. I will not submit it. And you took that back to the court and says, Your Honor, we have now sought to comply with what you said I should do by providing this to counsel. And I cannot myself directly give it to the counsel, to the court. The counsel won't give it, but I've done what I can do. You've told the court that? Yes, and it was on file with the district court before the contempt sanction issue. And we filed it after the show-cause hearing because these are privileged communications. If it was at all possible. As I understand it, you're making two arguments. You're making the initial argument that the Dutch, Dutch court was the proper court to issue a contempt citation, number one. And then number two, I thought you were making the argument that even if, even if that's not correct and the American court had the ability to issue a contempt sanction, that your client's arguments were still a good faith interpretation of the court's order. So I understand you're making two arguments, aren't you? We're making a series of them and they build with the original affidavit. Our argument is those legal positions were correct. Every day before your honors, you hear opposing counsel make arguments. One of them typically loses. That doesn't mean that that lawyer has made a misrepresentation. It means that your honors accepted one position over the other. We think Mr. Millen was right. But even if that's not true, even if you disagree that he had the worst argument there, we think it was well supported. That's step one. Then step two is the district court says, I disagree with your position here, Mr. Millen. I want it corrected. But the district court did not enter an order saying, Mr. Millen, go correct it. If that was the order, it would be a very different situation. It would be clear that the obligation was incumbent on Mr. Millen specifically. Instead, what we have is an order that says counsel for DMARC advisor. All agree that could have been, if Mr. Mabin had filed that statement, nothing is required of Mr. Millen. If I had gotten that statement filed somehow, nothing is required from Mr. Millen. So it is not a individual obligation that is placed upon him. It is an obligation for DMARC advisor to comply with the order, whatever that means. Third step in the chain is, okay, even if DMARC advisor violated that order, which we're not conceding, but for the sake of discussion, let's say the correction order. I'm looking at this. This may just be a very unfortunate case of misunderstanding. That there was a lack of communication that the attorney should have been more scrupulous and diligent in terms of interpreting the court's order. But it's not clear to me that this conduct justifies a contempt citation. That's my concern. You know, sometimes there are miscommunications and sometimes there are just misunderstandings. And the question is, does this fall into the miscommunication and misunderstanding and sort of good faith ability of clients, of lawyers to argue their client's case and the latitude we want to afford them in doing so? Or is this contemptuous behavior? Now, which bucket does this go in? Just putting the business aside about whether the Dutch court was the only one that had the authority to levy that kind of sanction. I want to know why you think this was just a case of miscommunication and misunderstanding, which doesn't really justify the kind of sanction that would ruin somebody's career or would impair somebody's career. And isn't that a part of it? I appreciate your Honor's sensitivity to the importance of this to Mr. Millen. Yes. If the order is going to be the basis for civil contempt, the Supreme Court is clear that it's got to be unambiguous. That person knows what is expected of them. The first time that the district court said, quote, Mr. Millen was ordered to correct is in the contempt order itself. I'm quoting from J.A. 1538. I'm just not sure that it makes a difference really that this is civil contempt rather than criminal contempt because even with a civil contempt citation, the reputational damage is severe. That's right, Your Honor. And you can say, oh, it was just civil contempt. But the fact that someone cited somebody for the court cited him for civil contempt, that's a pretty damaging remark in terms of a professional's career. It affects his ability to, every time he seeks pro hoc vicee admission, he can't practice in the Western District currently, despite being admitted there for decades. But I do agree with, I think there's a difference, Your Honor, between what would erring on the side of caution a person do to avoid getting cross. Why isn't this a question of whether or not this citation was too harsh given the circumstances? Because the elements of civil contempt weren't met, because there was no evidence of a personal violation of a clear order by Mr. Millen, and there was no showing of harm. But I really do want to make clear, I can imagine a lawyer, Your Honor, confronted with this correction order who says, I don't think my client should follow that. I'm going to tell my client the order is what it is. I'll advise you of the consequences of violating it. You make your own decision about what to do. That is not what happened here. Mr. Millen and I were clear about our law firm's instruction to the client about his obligations. Okay, but this is the point. We are debating what exactly happened here, okay? You have one view of what happened here. Opposing counsel will have another view of what happened here, and we're sitting here arguing about what did not happen here. I get that, okay, that's fine. But at the end of the day, it seems to me the question is whether the contempt sanction was simply disproportionately severe given the circumstances before us. Some of those circumstances are a little bit cloudy, and the legal argument is interesting. I get that. I understand what you're saying. But the question is, this is a very draconian sanction for an attorney, and the question is, given the cloudiness and uncertainty about what actually did or what actually didn't happen here, I just wonder if it isn't too severe. May I respond, Your Honor, or should I take that back up on rebuttal? Yeah, Your Honor. You have some rebuttal time, maybe with one of my colleagues. Yeah, I think Judge Wilkerson's question is a good question, but I think you're trying to posit under the elements of contempt. I think it comes in harm because of the differentiation between what civil contempt is for, which is to benefit the complainant, as opposed to criminal contempt, which is really dealing with the authority of the court. The judge here, I agree with Judge Wilkerson, that's a pretty harsh sanction. It doesn't seem to have any connectivity with the complainant. But on the other hand, it goes back to my question to you, and that is, it was really intended to say something the court probably thought you would do is to go give it to the court. Now, you say something was given to the lawyer, but what I saw was something that had your name on it, not his. And I think that's a problem for the court when you give something there. I think it can be cured, and I say that with a personal side to it. I know you lawyers. You have an excellent reputation, and I don't understand what went on between that district court judge and these lawyers and these excellent lawyers here and this excellent law firm to bring this to our court. It seems to be an embarrassment to me, and I'm suggesting there may be, the court may have thrown your bone to fix it with a little nuance. Because even if you win here, you still got this on the record somewhere. But it sounds like to me, if you do try to do what the court did, simply take your name off of that little email, put his up there, and send it and say it, then he's done it. And then it goes away. That just seems like to me to be the best way to solve this case, even if we agree with you. Because then you got all this over the record with that. But if you did that, sometimes before an opinion comes from this court here, there would never be an opinion from this court. Wouldn't be all over the record and all of that. You know, I just put that to you. But I think Judge Wilkerson has a point there. But ultimately it would, but it's still going to deal, it fits on the elements to me on the harm. But that leaves the rest of it kind of in place. I mean so, but I just throw that to you to think about a way in which, you know, I just believe you could do. Thank you, Your Honor. Good morning, Your Honors. May it please the court. David, sorry. Please, go ahead. Good morning, Your Honors. May it please the court. David Dory from the law firm of Blank in Wilmington, Delaware. Before I get into the argument and address, I'm going to go off script and address these points directly in a second. This is a position, it's the first time I've ever been in this position. I hope I'm never in it again, because I feel this sensitivity. What benefit are you going to get out of it so that Mr. Millen wouldn't be a practice in the West? I mean, civil contempt has some, it's different than criminal contempt. I mean, it's the benefit to complain as opposed to a criminal thing. What's the benefit? I don't think you want him to not be able to practice. Something tells me, I don't think you're going to stand up and argue and say, we want to keep him from not practicing. I'm with you. I understand that. So, you know, it's one of those cases, it, I mean, I think, you know, we are the Fourth Circuit. We're a very civil and collegial court. It just seems like lawyers, I think this could be worked out. Maybe I'm pushing too far, but it just seemed to be simple to me that what the court offered, right or wrong, could easily be done, and this would go away. But from your perspective, I don't see the harm, and that's kind of the element here. I know you say you had delay in all this other stuff that goes on, but I just don't see the harm in it to be honest, but it leaves in place the rest of the elements, which is not favorable from the, from Mr. Millen's reputation wise. It's still kind of on the record, and I'm, I'm positive in a way in which I think it sounds like to me it disappears. There's tremendous harm here, and I'm going, and it comes in the context of how we got here. So in, in appreciating the sensitivities of why we're here, and I hope we never have to do it again, nevertheless, my client was put through things they should have never been put through, and it started in December of 2022 when the court made a decision, decision to stay the action in, excuse me, denying my client. When you say the court, tell me. The Dutch court. Okay, fair point. In December of 2022, the Dutch court denied a motion by our Dutch colleagues who are here today to stay that action in favor of this as a first file action. Does the Dutch court permit American lawyers to come in and submit and make arguments before you, or must it come from the Dutch lawyer? I don't know that for sure, but I can answer your question as to what more they could have done, and I can jump to that. No, no, no, no. I want to hear that because that was kind of interesting when I heard that, that there's only, that you, you know, Mr. Miller can't do it himself and just file something because we told him to do it. Right. Court has to permit you to do it, and under Dutch law, the Dutch lawyer is the one to do it, and if he chooses not to do it, I don't know the avenue you would have. There may be some, they don't have the kind of common law writs we got, or some kind of way you could do it, but must this only be done through the Dutch lawyer, or can Mr. Hartzell or Mr. Miller individually walk into court, file it in Dutch court on their own behalf, because actually, I think this is against Mr. Miller directly, that order, telling him to do it. Excuse me, and that seems to be pretty much critical to the resolution of this case, because if Mr. Miller can file something with the Dutch court, then it seems to me we don't have the problem created by the scenario where Dutch counsel is saying, I am not going to file it. So, could you answer that question? Directly. At JA 1361 is a declaration by Mr. Hove of one of our Dutch colleagues, August 30th, 2024, and it was a week, six days after Judge Reidinger held it here, where Mr. Mayboom personally appeared, and our Dutch colleagues personally appeared, and everybody had an opportunity to speak. Judge Reidinger was the epitome of judicial demeanor and restraint in the face of what Mr. Mayboom was arguing with him about. But Mr. Hove, he then said, submit follow-up materials after this, and Mr. Hove's declaration was submitted at paragraph 9, JA 1361. He notes that Mr. Miller could have filed a letter or sent an email on his own to the Dutch court. To the court? The Dutch court, and that is a Dutch lawyer saying that. Who says he could do that? Mr. Hove, Mr. Hove is our colleagues in the Netherlands. We have two counsel here who are representing Demartian in the Netherlands, and we have worked very closely together back and forth on these cases, and it goes to the heart of your concern about what's the harm here. Because once we found out in December of 2022 that it was denied, that the Dutch... So he makes a statement and then sends it to the court, and the court can either accept it or not. You know, it actually, I guess if you read it, it is really, the way you send it to the court, the court doesn't read it, that's the court. But the compliance would be to send a statement to the court, whether it receives it or not. But I think he probably could do it through the Dutch counsel too, by simply doing what Mr. Hudson did, same kind of, maybe email, whatever the statement is, just put his name on it. It seems to me the district court may well determine that is in compliance. And that's the part that I'm seeing missing here, that even if it doesn't work, pretty simple. I mean, just go back to the district court and says, send an email to him, put your name on it, and couch it, and then go back and says, okay, judge, we've done it, and we know this is for the Fourth Circuit, but we would ask that this be lifted and he'll be dismissed. I totally agree. And what you focused on is a really important point. It's what could he have done to try and minimize the damage? And what would he need to say? It would be a corrective statement, or it would... I understand it's a conclusion-corrected statement. What does he need to say to amount to a corrective statement? Correcting what? Because you understand what he said actually was okay under Dutch law. The question is, the misleading part, at least the court here, determined that, okay, that's not true under American law. But what he said for Dutch law was true. And so if the court here determines it to be misleading, it wants him to go back and let them know. I should have also pointed out that in the American court, this is it. I was representing what I understand the Dutch law to be. If it was misleading, I apologize. Seems like to me that satisfies it, doesn't it? But that's not what he was doing. The critical piece that Judge Reidinger... Tell me what else he needs to say beyond that. He needed to say what Judge Reidinger said, what he was supposed to say, and the simple reason is this. Judge Reidinger... Well, at this point in time, there's no reason to go through that. I mean, you got to read it. I mean, the purpose for what he would say then is different. What he's now saying is simply, I'm complying with this contempt order. I mean, he's already got you. I mean, what good is that going to do at this point? This is simply to satisfy the district court that he's not doing something intentionally or trying to offend the district court. He's not trying to go and convince them to actually do it anymore because it's already done. I understand, and the timing is the 6-27-2023 hearing. The court decides and the Dutch court reverses a course in December of 2023 and puts a stay in place based upon the submission of the statements. All those are true factors, but the fact was, and this goes to Mr. Hartzell's point, if you look at the order from Judge Reidinger, it said you're going to submit two statements, one by the company with a Dutch translation, and then it says one by counsel with a Dutch and an English translation, which can only be interpreted as meaning that something had to come from American counsel in some fashion. And in addition, the first paragraph of that says that statement has to say that statements made by Mr. Millen were misrepresentations. So it's clear that he's the focus of all that, but what I think the court needs to understand here is our client has this ruling in December of 2022. There's a trial set for July 5th, 2023. In March of 2020... You know, when you really think about it, you put a lot on Mr. Millen in terms of what his little corrective statement, the court said it, really the Dutch counsel that went and represented that May 2022 date, the Dutch counsel stood before a Dutch court and said that. That was the basis for saying one was earlier than the other. American counsels come in and say something, what does that mean? That probably means what it means here if a Dutch guy comes to this court over here and you got two American counsels who say something, how do you think that's going to turn out? But I mean that was really the basis for it. Well, what I can do is answer your question with the facts that are in the record. And we find out in 2022 there's... But it is a fact that the Dutch counsel represented May 2022. He did. He did. It is a fact that is incorrect. He did. And here's where it gets very important for purposes of this hearing. We should have never gotten to June 27th, 2023, ever. On March 15th of 2023, starting at JA 720, we had a case management conference and I went in there. I took a look at the pleading notes from the previous September provided by our colleagues. I looked at the decision the court made. I wanted a causal connection between the two about the misrepresentations. I was astounded. And I walked in and the judge writer didn't want to hear it because it wasn't before him. I forced him to listen to what we were doing and what I saw and what I found. Mr. Hartzell was in court. Mr. Millen was not. Then on April 12th, we filed a motion to stay an anti-suit injunction. And the very first paragraph of that says we want an injunction to stay that case, them from proceeding with that case because they made it falsely represented to the Dutch court. Remember, our hair's on fire. This is crazy. We got a June, July 5th deadline. The proceedings on the merits in the instant case did not commence until May 22nd, 2022. That was in paragraph one A of our motion. Mr. Miller didn't make that much representation. It gets better. On paragraph seven of the same motion, plaintiff at JA 773, plaintiff raised these concerns at the March 15th, 2023 status conference, which I just mentioned, and further met and conferred with defendants council on April 5th, 2023 to determine if defendant was willing to take any action to correct the misrepresentations made to the Dutch court. Defendant was not willing to take any action. And then Mr. Millen shows up on June 27th. Judge Wilkinson talk about miscommunication. Some of that sounds like to me because I'm thinking a Dutch lawyer is analyzing and looking at, because there's two procedures in Dutch law. Preliminary injunction is different from merits. The United States is different. Plaintiff comes in. It's all together. Dutch lawyer looks at it and says, oh no, the way this thing works is the merits isn't there. All you got is preliminary injunction. Well, that's not true in America, but he looks at it that way. He comes up with this May 22nd, 2022 date, I guess, because that's when discovery or something, maybe that's what he thinks it starts. So if American counsel looking at it said, well, that's what the Dutch council represented in front of the Dutch case. And it's really true on the Dutch law, this is it. I don't see the problem. But it is a problem because that's not the American side. Exactly. That's exactly right. But you see what it, you see what it, it gets muddled and it gets really gray with Judge sometimes it's just miscommunicating and how it all, in other words, maybe enough wasn't said. You even said you had to force the judge to even get to this thing here. And I just, you know, if ever I see the case come to us, they'll say, you guys ought to get together and work this thing out. It should not be up at full circuit. This is, there are some cases we ought to get together. I see no benefit that's going to you. If you saw my clients run out of the courtroom on June 27th to catch a plane to the Netherlands. But I don't see a benefit from, from July 5th, from Mr. Millen, not being able to practice in the Western district to you. Oh, I understand the point, Your Honor. But that's the, that is, that is. I guess you wouldn't have him going against you. No, no. I'm sensitive to this. No matter how passionate I get, I'm sensitive. I get that. And where I get frustrated is we never had to get there. We told them this. And when we went into court on June 27th, you can look at the transcript. Mr. Millen said, I don't know what misrepresentation I didn't make. He did say at JA 922 lines 15 to 18. I think if I were aware that Mr. Mayboom made a statement about the U.S. proceeding that was incorrect or about U.S. law that was incorrect, I would have a duty to correct that. Mr. Millen's own standards stated in court on June 27th. And so where I get frustrated and I watch my clients having to go fight that, and that decision in the Dutch court wasn't made until December 2023, and they're running into court on July 5th, and Mr. Mayboom is still arguing that it's wrong. When did your, when did your relevant harm start? Pardon me? When did the harm that you claim start? It started from the minute that they denied the statement. You have a date? I'm sorry. I'll stick right to it with Mr. Millen's comment. In my opinion, it started the minute I raised it in court on June, on March 15th, because we couldn't.  2023. We had a case management conference where I... And then what was the date of the correctional? June 27th, 2023. So it started before the correctional? Yes. No. The harm that ties to what he could have done... Well, you just said it to me. You just said the harm started before the correctional.  And yet you say the correctional is the address of the harm. No, I understand your point. Let me back up a second. The harm to my client... No, that was your point. I didn't say it. I'm with you. The misrepresentations that caused the erroneous decision in December... Keep in mind, the court, the DMA, wanted Mr. Millen's affidavit to help them with that motion. When did the harm start? The harm to my client started... It started no later than June 27th, 2023. But your honor, my issue with Mr. Millen is because we went through this straight from March to June to avoid June. And they would not... And Mr. Millen's own professed duty to correct it. He was told... But he's in contempt for the June correction order, not for what's going on before June. So how's that harm before June being a contempt... I appreciate the point. Can bring an order later on. I appreciate the point. The harm for my client started when they had to go into court on July 5th, 2023 to go to fight the Netherlands thing because of the misrepresentations. Remember, the reason the court issued the order and heard it so quickly was because trial was set on July 5th. So we heard it on the 27th. He told them to submit it by Monday, June... I think it was Monday, June, July 3rd. And the other side submitted. I'll go directly to your point, your honor. I understand exactly where you're coming from. Because Mr. Millen wasn't required to do anything. You came back and gave me a date after that. That's what you just did. Let me characterize and be clear. My argument's twofold. One, if you apply a duty he told Judge Ridinger he had, we should have never gotten to June 27th. Now go. The order comes down June 27th. He's under obligation to file something by July 3rd. So I totally agree that until July 3rd comes and goes and it's not done, there's no noncompliance. There's no harm. No harm that stems from noncompliance. I do agree with that. And I apologize if I was confusing you on that. I do agree with that. And when I'm speaking of harm earlier, it's more on the broader DMA harm. I get that. And I'm concerned about the implications to Mr. Millen as well. With respect to the miscommunication piece, I just told you why there's no miscommunication issue. Because this was all explained to him beforehand. And we all try to avoid having to do this in the first place. Again, I'm not changing my argument. There was no harm. He wasn't required to do anything until July 3rd. But at the end of the day, when you look at this record of miscommunication, there's no record evidence in this case that Mr. Millen did anything. I understand it could have been related to, I don't know. It could have been legal counsel. But I don't know. But at the end of the day, he didn't do anything. And that falls into two categories. One, he didn't try to send an email. He didn't try to send a letter. He didn't. We have Mr. Hartshall's comments about what they tried to do together. In my view, because Mr. Millen was the one asked to give an affidavit, and Mr. Millen's point of it was to explain to the Dutch court the implication of U.S. law, which directly impacted that decision, that puts him in the firing line for that. So once he doesn't make that, and this is the point, Your Honor, the statement from the U.S. counsel that goes to the Dutch court gives the Dutch court to say, Mr. Mayboom, stop on July 5th. Stop. We have a statement from U.S. counsel that says, you misled us. Because what I wanted as a Dutch court was U.S. law on this point. Because I'm trying to compare which case started first. And that's clearly what the record reflects. They solicited that information. That goes to, Your Honor, mention Article 12. It's directly in Article 12, firing line. So if he submits that statement, Mr. Mayboom is shut down. But he didn't. He kept arguing on July 5th. And if you go look at, if you look at when, in the August hearing, before Judge Ridinger, Judge Ridinger asked him, why don't you just submit the order, Mr. Mayboom, and stop criticizing it? And he said, because the order doesn't say I can't disagree. And I think, Your Honor, I hold the right to find that. And I've all the right in the world to tell the Dutch judge that, just as I have the right to tell you in your face that I think you misunderstood. That's JA 1335 on August 23rd, 2023. And that goes to the point, Your Honor, if there's a statement by American counsel, because A, DMA offered one voluntarily. B, they clearly were making a decision based on US law to compare the merits. And C, if he submits it to say this was wrong, then the Dutch court has what it needs. And Judge Ridinger was careful to avoid any interference. Before you sit, address Judge Wilkerson's concern.  My reputation is draconian that, in other words, it doesn't seem to be any connection to anything with the suspension and a civil type action of this. And I'm still confused about the harm and the benefit. I mean, because that's really not what was actually the sanction. What was given actually didn't do any of that. It's one thing to give you $400,000 or something like that, I see a benefit there. But I don't see a benefit from the counsel other than you don't get that counsel to come against you. And I don't know if you claim that to be a benefit. But it's plainly, and I recognize, I don't think they made a proportionality argument. But there is a question of the nature of this sanction, of this suspension, that it just seems out of proportion. It seems not to apply. What's the reason for it? My time is up. May I address the answer to the question? Okay. One, in terms of harm, JA 1542, in the contempt opinion, was the court's determination of it, which was supported by JA 1341 and 1342, which was Mr. Jansen appearing in court on August 23rd, 2024, to address that issue. That was one of the things. So that covers at least the financial harm. Second, my client was still required to go and fight that issue to get it reserved. Let's go to proportionality to get it reversed. Let's go to proportionality. I think what influenced the court's decision is this. Mr. Millen walked in, and you can read the transcript. He walked into court on the 27th and professed to not understand anything that was misstated. And I just told you the motion, that was just one piece of the motion. So we had had conference, meet and confer, and motion. So I think, I appreciate it. So the bottom line is I think the court was influenced by a lack of action. Thank you. I'll judge around, thank you. All right, Mr. Hartshall. I think I understood my colleague, Mr. Dorey, to say, quote, no harm that stems from noncompliance. That's the ball game on civil contempt. Harm is the fourth element of civil contempt. It must be shown by clear and convincing evidence. If there is clear and convincing evidence of a harm from violating a court order, if, as Mr. Dorey, as I understood him to say, there is no harm stemming from that noncompliance, there's no civil contempt. There's no need to talk about the proportionality of the sanction. I do want to be clear that in all this discussion that Mr. Dorey has been raising about alleged disadvantages they face in the Netherlands, all of that argument was about timing. Mr. Millen made no assertion, one way or the other, about when the US case began, because he wasn't speaking on that question. He was responding to Ms. Duffy's affidavit, which herself said nothing about when the US case began. So this is not a situation where silence rendered other aspects of his affidavit misleading. There just wasn't anything in there about when the case began. And yes, it is very important to Mr. Millen that this suspension be lifted. But it's not just the suspension, it is the civil contempt itself. That is the injury that we are seeking remedy for, the mere fact of being held in civil contempt. That's appealable in and of itself, the adjudication of civil contempt as to a non-party, and it has real-world impacts on it today. It's not just pride. What Mr. Millen has been ordered to do is to apologize to the Dutch court for arguments a Dutch lawyer made to the Dutch court. Think of the implications of that, what exposure that might have for Mr. Millen to say, DMARC advisors, Dutch lawyer, that argument that DMARC advisors, Dutch lawyer made to your honor over there in the Netherlands. I am saying on my own behalf, Mr. Millen's behalf, as counsel to DMARC advisor, that was wrong, what the Dutch lawyer said to you, and I'm sorry. I do not know genuinely what kind of jeopardy that would expose Mr. Millen to. I think it could be narrowed much more than that. I don't think he needs to say all that, at least from what I read. Seems like to me, he can admit the Dutch lawyer spoke the law as it exists in Dutch law correctly. There's an American way in which this is viewed. There was an issue as to which applied, in my view, the Dutch lawyer should have been able to say that. The court there believes that I should have informed him of the American law, and he may have already known the American law and chose to do it. And to the extent that was misleading, I apologize. That does not sound like it needs, maybe the other side sees it different. Maybe the judges see it differently, but I, it looks like me as a very limited, it's much more limited than that. Do you, I was going to say, do you see, Judge Millen has suggested, and in terms of resolving this whole matter, the stop short of an opinion, vacating the contempt order. Do you see a promise of having some informal means of addressing this matter with the district court to make the whole issue go away? And if I could piggyback on that, do you agree with Mr. Dory's representation here that in the joint appendix is a declaration from Dutch counsel saying there was nothing that would have prevented Mr. Millen from himself filing a statement or an email with the Dutch court? Do you agree with that? I agree that their Dutch lawyer said from the gallery that Mr. Millen could send an email to the court. I suppose the same way a Dutch lawyer could send this court's public email address. But the words the court uses, both in the correction order and the contempt order, matter. I understand- Yeah, but I think Judge Wilkinson and Judge Wynn are making excellent points. You know, there's gotta be a way to work this out. And it seems to me there's a little bit of standing on righteousness going on here. And, you know, I understand your position, but there has to be a way to work this out. I do want to make sure- the point is well taken. I want to make sure I respond directly to the question that your honors have raised. I don't, unfortunately, see an informal way to resolve this because he's been held in civil contempt. I mean, the thought occurs to me, and I think ideally an informal means of resolving this would be a good idea, but the fine district judge, he got the bit in his mouth, and he may, as a matter of sort of pride or whatever, decide that, no, I feel like this has been- what I did was disregarded and disobeyed and everything. I could see a district judge getting his back up in a situation where there's no formal vacating- well, the fourth circuit hasn't issued a formal opinion vacating the contempt order. I mean, I can see a district judge saying, well, if they want to vacate the contempt order, that's fine, but nothing short. In a sense of pride, he may feel that the authority of the court is at stake. I can see a lot of reasons why a district court here would really plant his feet short of a formal order vacating. So, I'm just not sure if the informal mechanism is likely to work. We could give it a chance, but I could see district courts saying, well, they haven't vacated the order, it still stands. I wish there were, Your Honor, and the last sentence I'd leave you with is I want to make sure it is clear that it's not a matter of pride. It is a matter of honor and professional obligations. Mr. Millen is being asked, the words on the page the district court used, to admit that he and somebody else said which is not true. That is not just refusal to apologize, that's a big deal. It would be a big deal to me, it's a big deal to him. Thank you, Your Honor. Thank you. We'll come down and we'll re-counsel and proceed into our final case.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Barbara Milano Keenan